## SMITH et al. v. VANOVER.

Court of Appeals of Kentucky.

Feb. 12, 1954.

D. G. Boleyn, Hazard, for appellant.

Don A. Ward, Hazard, for appellee.

MOREMEN, Justice.

This case involves the question of the proper distribution of property of a deceased son and daughter of appellee, Nancy Ellen Vanover.

Appellee, Nancy Ellen Vanover, was the mother of Polly Vanover and Monroe Vanover. Polly Vanover married John Lowe who died as the result of a mining accident. She was entitled to the benefits of the Workmen's Compensation Act KRS 342.010 et seq., and there is evidence that she made a settlement under which she received about $6,000 in cash. On June 6, 1947, she married John D. Smith, who was a widower. Under her will, dated June 2, 1948, which was probated a few days after her death on August 16, 1950, she devised and bequeathed all of her property to her mother, appellee Nancy Vanover.

In the meantime, Monroe Vanover, the son of appellee, died on August 28, 1949, intestate and left surviving him his widow, Rachel Vanover. Monroe Vanover and Rachel Vanover had owned a house and lot in Hazard which was held jointly by them. About a month after Polly Vanover Lowe Smith died, her husband, John D. Smith, married his sister-in-law, Rachel Vanover, who was the widow of Monroe Vanover. In December 1950, appellee, Nancy Vanover filed a petition in the circuit court by which she sought to obtain possession of all the personal property which belonged to Polly Vanover Smith at the time of her death and sought that she be adjudicated the owner of a small farm located in Perry County to which Polly Vanover Smith had title at the time of her death. She also joined Rachel Vanover Smith as defendant and alleged that she was owner of one-half undivided interest in the tract of land which formerly had belonged to her son, Monroe Vanover, and asked that the property be sold and the money divided among the interested parties as their interest might appear. Apparently no objection was made to this joinder.

The appellant, John D. Smith, set up by proper pleading his claim to curtesy rights in the property of his deceased wife. Rachel Vanover Smith alleged her interest in the property jointly owned by her and her deceased husband, and claimed the right to occupy it as a homestead.

These and other issues were properly joined and, after proof was taken and upon submission of the case, judgment was entered by which the court held that (a) the real estate which had been jointly owned by Monroe Vanover and Rachel Vanover Smith, now belonged to appellee, Nancy Ellen Vanover and appellant, Rachel Vanover Smith, jointly, and that Nancy Ellen Vanover's moiety was subject to the dower interest of Rachel Vanover Smith; (b) that the real estate which had been owned by Polly Vanover Lowe Smith, deceased, now belonged to appellee, Nancy Ellen Vanover, subject to the curtesy right of appellant, John D. Smith; (c) that certain personal property, which consisted of household furnishings and personal effects of Polly Vanover Smith, was jointly owned by John D. Smith and Nancy Ellen Vanover and (d) the sum of $1,525.05 on deposit in a local bank, which was a remanent of the fund which Polly Vanover Lowe Smith had received as compensation upon the death of her first husband in a mining accident, was awarded to Nancy Ellen Vanover. In connection with the latter item the judgment recited: "* * * the said sum is a part of the separate equitable personal estate of the said Polly Vanover Smith; and it is the opinion of this court that the said Polly Vanover Smith had the legal right to bequeath the said separate

equitable estate thus acquired, by will to the plaintiff Nancy Ellen Vanover without any provision for her husband, John D. Smith and even to the extent of depriving him of his possession of same under the laws of descent and distribution."

Appellant insists that the judgment is erroneous because (1) under KRS 392.020, he was entitled to one-half the surplus personalty including the cash on deposit in the bank, and (2) it denied to the widow, Rachel Smith, her claim to a homestead right in the dwelling house left by her first husband.

KRS 392.020, insofar as it deals with the surviving spouse's interest in the personal property of the deceased, reads:

"After the death of either the husband or wife * * *. The survivor shall also have an absolute estate in one-half of the surplus personalty left by the decedent."

Counsel for appellee argues that the foregoing statute does not apply to any money that was a part of her separate equitable estate; insists that the compensation received by her on account of the death of her first husband constitutes such a fund, and relies on Hughey v. Warner, 124 Tenn. 725, 140 S.W. 1058, 37 L.R.A., N.S., 582, which case seems to deal with a problem that was of great concern to the courts during the early period of woman's emancipation.

Even after the right of a man to dispose of property by will had been well established, a married woman had only limited testamentary powers. She could bequeath personalty with the consent of her husband but, under no circumstances, could she devise real estate. This was in accordance with the then prevalent theory that a married woman was controlled by her husband in respect of matters of property and even, we suppose, in other respects. The harshness of this rule was tempered at a later date and was relaxed in cases where the husband consented to her testamentary right by express agreement, such as through antenuptial contracts, and, later, a doctrine of equity developed by which a married woman had full power of disposition by will of her separate personal estate. 57 Am.Jur. Wills, Sec. 58. It is with that facet of the law that the Hughey case is concerned. In the later Tennessee case of Larkin v. Lightburne, 132 Tenn. 277, 177 S.W. 1154, 1156, the court recognized the problem discussed in the Hughey case, but in the application of the law to a situation of facts similar to that presented in the case at bar, said:

"The power to devise is conferred on all married women as to all estates real. All are likewise restricted so they may not by will deprive any husband of his estate by the curtesy.

"Moreover, this is right and just. It is beyond the husband's power by will to deprive his wife of dower. No more should she be allowed by will to defeat his curtesy."

This distinction and limitation upon a married woman's right to dispose of property has also been recognized in this state. In Smoot v. Heyser's Ex'r, 113 Ky. 81, 67 S.W. 21, it was held that a married woman was not, either under the Act of 1894 regulating the property rights of husband and wife or under a judgment rendered prior to that Act (this was under a legal procedure whereby a woman might have certain property judicially declared to be a part of her separate estate), empowered to execute a will disposing of her personal property so as to defeat the interest of her surviving husband under Kentucky Statutes, § 2132 (now KRS 392.020).

KRS 342.180 which provides that all compensation and claims therefor shall be exempt from all claims of creditors has no application here, because no relationship of creditor and debtor is involved. We are concerned only with the statutory right of curtesy.

We are of opinion, therefore, that the court erred in holding that appellant,.

J. D. Smith, was not the owner of an absolute estate in one-half of all the surplus personal property.

 In view of the fact that it is necessary to reverse the judgment in this case on the foregoing ground, we believe the interest of justice will be better served if we do not attempt to decide, from the meager proof offered, the question of whether or not Rachel Smith abandoned her right to homestead in the dwelling house she occupied with her first husband. The widow's homestead right may be lost by abandonment or alienation. Berger v. Berger, 264 Ky. 225, 94 S.W.2d 618. There was an issue concerning abandonment but the proof is not clear or satisfactory. The facts should not be difficult to ascertain and, upon retrial of the case, it is suggested that additional proof be adduced and a finding of fact made by the chancellor.

Judgment reversed.